## Registration of Bovine Animals.

*Animals—Registration of bovine animals—Acts of May 19, 1887, P. L. 130, July 22, 1913, P. L. 928, and May 28, 1915, P. L. 587.*

1. The Department of Agriculture, in determining whether or not an animal condemned by the State was or was not a pure-breed bovine, is not limited to such registry associations as were in existence before the date of the passage of the Act of July 22, 1913, P. L. 928.

2. If an association established since the date of the Act of 1913 submits records which, upon investigation, are deemed honest and as reasonably accurate, at least, as the registration of an older association, the department should recognize such association and make payments on the certificates furnished by it to the same extent as it would accept the record of registration in an older association.

Department of Justice. Opinion to Hon. F. P. Willits, Secretary of Agriculture.

Gollmar, Dep. Att'y-Gen., Jan. 30, 1926.—The Attorney-General has referred to me your request for an opinion as to whether your department should recognize the registration of bovine animals as made by a new association called the Holstein-Friesian Registry Association, Incorporated (under the laws of Delaware), of which association Howard C. Reynolds is secretary.

You state that all registration of Holstein cattle has heretofore been made by means of the Herd Book of the Holstein-Friesian Association of America, of which association ex-Governor Frank O. Louden, of Illinois, is president, and that to date no other breed of bovine cattle has more than one registry association. The only direct reference to registration of bovines is found in the Pennsylvania Act of July 22, 1913, P. L. 928 (supplied by the Act of May 28, 1915, P. L. 587), which provides that the amount paid by the State shall in no case exceed . . . for a registered bovine animal the sum of $70, and in the Act of May 19, 1887, P. L. 130, providing that every person who by any false pretense shall obtain from any club, association, etc., for improving the breed of cattle . . . the registration of any animal in the herd registry of such association, club, . . . shall, upon conviction, be punished by imprisonment, etc.

The question is whether your department should recognize only the registration in such organizations as were in existence at the time of the passage of the Act of 1913. The matter is one of great importance to the breeders of cattle throughout the country.

The old Holstein Association, now the only one recognized by the State, has spent thousands of dollars gathering progeny records, which are regularly published in herd-book form. This book can be obtained by any member of the association.

In this manner the new association has access to the records of the Holstein-Friesian Association of America, in so far as they are published in the herd book. The officers of the new association claim they do not and will not register any animal in its herd book which has not been registered by the old association, either in its herd book or by certificate for any record subsequent

### Registration of Bovine Animals.

to the publication of the herd book, or animals which are progeny of cattle thus doubly registered or certified. The certificate, they claim, makes the record complete up to the time when registration is made by the new association.

By adopting this system, the new association alleges that the certificate issued by them shows as accurate a progeny record as that issued by the old association, and is as good evidence of the pure-breed nature of animals thus registered by it.

Section 21 of the Act of July 22, 1913, P. L. 928, provides as follows: ". . . The amount paid by the State shall in no case exceed . . . for a nonregistered bovine animal, the sum of forty dollars; for a registered bovine animal, the sum of seventy dollars. . . . The amount paid by the State, together with the estimated value of the carcass, hide and offal, shall not exceed ninety per centum of the fair market value of the animal. . . ."

This section of the act pertains to the payment of money for animals condemned by the State because they are diseased. It provides the means by which the department can determine the amount to be paid, *i. e.*, not more than $40 for a non-registered animal and not more than $70 for a registered animal. The difference in cost to the State may be $30 in each case. So it is readily seen that, under section 21, the question to be determined is whether the progeny report, as submitted to your department by an owner whose animal has been condemned, is an accurate record which will prove that the condemned animal was a pure-bred bovine, and which record, therefore, can be relied upon for the purpose of paying out an additional $30 of the State's money.

The section of the act relating to registration is intended to fix the amount the State shall pay for non-registered bovine animals and the amount which shall be paid for registered bovine animals. This registration by an association is in effect legally constituted *prima facie* proof that the animal is a pure-bred in its class, and, if pure-bred, the State is bound to pay the larger sum of money, provided always that the registration is of a nature and surrounded with safeguards, such that it is *prima facie* as good evidence in new associations as in the original old one.

But there is nothing contained in the Act of July 22, 1913, P. L. 928, or its amendments, which provides that only the registry association which was in existence at the time of the passage of the act should be recognized. The State is interested in the registration, so far as the provisions of this section of the act are concerned, only because it pays out a larger sum of money on a certificate and needs, therefore, reliable evidence in the line of dependable registration.

Because the interest of the State is monetary, it is your duty to protect its funds and to be certain that the registry recognized by your department is an accurate and efficient record.

Therefore, I am of the opinion that your department should recognize, for the purposes of payment by the State, only those registry associations, whether one or more for each pure-bred, which can furnish certificates which will enable you to assume, so far as it is possible to depend on any register, that the animal condemned by the State was a pure-bred bovine.

If the Holstein-Friesian Association (the new association) submits records which, upon investigation, are deemed by you thoroughly honest and as reasonably accurate, at least, as the registration of the old association, for determining whether the animal condemned by the State was or was not a purebred bovine, your department should recognize such association and make

payments on the certificates furnished by it to the same extent as you take registration in the old association as acceptable. In other words, the purpose of this particular law was to raise the maximum $30 for pure-breed bovine animals as determined by highly reliable registration, such as the legislature believed to be provided by the old association, and the burden is on the Department of Agriculture to determine whether any new registering association for any pure-breed bovines can be relied on with substantially as much certainty as the reliance put on pure-breed associations in existence at the time of the passage of the act. This is a question of fact and must be investigated and ruled on by you.

From C. P. Addams, Harrisburg, Pa.